Randy K. Dix
Jonathan McDonald
DIX, HUNT & McDONALD
310 Broadway
Helena, MT 59601
Telephone: (406) 442-8552
Facsimile: (406) 495-1660

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| LILA EVANS, BOYD EVANS, JAMIE EVANS, JAMES EVANS and CRYSTAL EVANS,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Cause No._____<br><br><br>**COMPLAINT** |

## INTRODUCTION

This action seeks redress for personal injuries sustained by Plaintiffs as a result of substandard medical care Lila Evans was provided by the Indian Health Services medical system. Specifically, the IHS Hospital in Browning, Montana, failed to inform Plaintiff Lila Evans of a pathology report showing she has cancer for more than a year, by which time the cancer had significantly progressed. This complaint alleges negligence. Plaintiffs Lila Evans, her husband and children allege as follows:

## JURISDICTIONAL STATEMENT

1. This is an action against the United States of America, brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671, et seq., for negligence and medical malpractice in connection with the Indian Health Service/Blackfeet Community Hospital's care of Plaintiff Lila Evans. The medical malpractice was caused by the negligent acts and omissions of employees of the United States government while acting in the scope of their offices and employment, under circumstances where the United States, if a private person, would be liable to Plaintiffs in accordance with the laws of the State of Montana. This Court has jurisdiction over this matter per 28 U.S.C. §1346(b).

2. Venue is proper per 28 U.S.C. § 1402(b) in that all, or a substantial part of the acts and omissions forming the basis of these claims occurred in the District of Montana, and arose from medical care provided within Montana by the Indian Health Services/Blackfeet Community Hospital's medical system. Plaintiffs are residents of Glacier County, Montana.

3. Plaintiffs have fully complied with the provisions of 28 U.S.C. § 2675 of the Federal Tort Claims Act.

4. This suit has been timely filed, in that Plaintiffs timely served notice of their claims on the Department of Health & Humans Services and Indian Health Services on or about November 9, 2011. More than six months have passed and no response whatsoever has been made by the United States of America.

## PARTIES

5. Plaintiff Lila Evans lives in Browning, Montana, and is an enrolled member of the Blackfeet Tribe. As an enrolled member, she receives medical care from the Indian Health Service medical system, specifically the Blackfeet Community Hospital.

6. Plaintiff Boyd Evans is the husband or Plaintiff Lila Evans. Plaintiffs Jamie, James and Crystal Evans are the natural children of Lila and Boyd Evans.

7. The Indian Health Service is an agency of the United States of America's Department of Health and Human Services. It is headquartered in Washington, D.C. and has offices and facilities throughout the United States, including in Montana. It exists to provide medical care and federal benefits to the Native American and Alaskan Native peoples. The Department facilitates this by employing medical professionals to provide medical care and treatment to recipients of Indian Health Service benefits, including Plaintiff Lila Evans.

## FACTS

8. This claim arises from the failure of Defendant and its employees to inform Plaintiff Lila Evans of the findings of a pathology report showing she had developed cancer. As a result of that failure, she was not properly or adequately treated for over a year, during which time the cancer significantly progressed to a point where radical cancer treatment was required.

9. On July 31, 2009, Plaintiff Lila Evans presented to the Blackfeet Community Hospital with a lump on the right side of her neck. The IHS practitioner who saw her prescribed antibiotics and scheduled a CT scan for the following week.

10. The scheduled CT scan took place August 3, 2009 and the radiologist found the findings suggestive of a branchial cleft cyst and recommended referral to an otolaryngologist and a surgical consult.

11. Plaintiff underwent a biopsy of the mass in her neck on September 8, 2009, in Great Falls, Montana. Samples of the mass were sent out for pathology diagnosis. The pathology report was negative for malignancy and the course of antibiotics continued.

12. One month later, on October 13, 2009, Lila Evans underwent a second CT scan, which revealed the lump had continued to grow. The medical providers decided to remove the mass surgically, which occurred on November 13, 2009.

13. Immediately following surgery, the excised lump tissues were sent to LabCorp pathology lab in Kent, Washington for analysis. On November 20, 2009, a pathology report was sent to Blackfeet Community Hospital indicating the case was being referred for consultation. This pathology report was received by Blackfeet Community Hospital and initialed by one of Plaintiff Lila Evan's providers there.

14. The pathologist at LabCorp referred the tissue sample out for consultation to the University of California Los Angeles (UCLA) Medical Center. UCLA Med Center received the tissue sample on or about November 23, 2009. The pathologist there diagnosed the excised mass as "most consistent with nonkeratinizing squamous cell carcinoma most likely arising from branchial cleft cyst[.]"

15. The UCLA Med Center pathologist's findings are memorialized in a report dated December 7, 2009. The report was sent via facsimile to Blackfeet Community Hospital on December 9, 2009. Upon arrival at Blackfeet Community Hospital, Lila Evans' patient number and date of birth were handwritten on the pathology report, and the report was filed in her medical file.

16. Lila Evans was not notified of the pathology findings, nor did she undergo any treatment for her diagnosed cancer.

17. Lila Evans returned for medical care at Blackfeet Community Hospital on numerous occasions in 2010. At no point was she informed of the pathology findings diagnosing her with cancer, including when she showed up with complaints of fatigue.

18. On January 14, 2011, while serving as a state legislator in the Montana State House of Representatives, Plaintiff Lila Evans began to experience swelling in her right neck and headaches. Concerned the excised mass was returning, she called her physician at Blackfeet Community Hospital, who prescribed more antibiotics and recommended she follow-up with a doctor in Helena, where she was temporarily residing.

19. Approximately three weeks later, on February 8, 2011, Plaintiff Crystal Evans called the physician at Blackfeet Community Hospital and expressed her concerns about her mother's health and the swelling neck. At this point, the physician at Blackfeet Community Hospital appears to have found the pathology report from December 2009 and scheduled Plaintiff Lila Evans for a CT scan the next day.

20. On February 9, 2011, Lila Evans underwent a CT scan of her head and neck which revealed an irregularly marginated lesion and suspicious lymph nodes that were diagnosed as regional metastatic lymphadenopathy. After this exam, Plaintiff Lila Evans learned for the first time what UCLA Medical Center had discovered 15 months before–she had cancer, which was now spreading.

21. Defendant's physicians ordered an MRI, which took place February 16, 2011, and which revealed the cancer had indeed spread since 2009.

22. On February 25, 2011, Lila Evans underwent a triple edoscopy and biopsy of the base of her tongue. The biopsy tissue confirmed the cancer had spread.

23. Lila Evans was referred to the Sletten Cancer Institute in Great Falls, Montana to consult with oncologist Kelly J. Underhill, M.D., on March 2, 2011. Dr. Underhill staged Plaintiff Lila Evan's malignancy as a stage IV-A carcinoma.

24. Dr. Underhill recommended as treatment a combination of chemotherapy and radiation, which she described as "arduous and associated with

a great many side effects[.]" In anticipation of the therapy, Dr. Underhill recommended a dental evaluation to ensure Lila Evans' teeth could withstand the harmful effects of the therapy, as well as a gastroenterology consultation for the anticipated placement of a feeding tube.

25. Lila Evans began treatment for her cancer on March 14, 2011. She experienced the inflammation and ulceration of her esophageal and digestive tracts, lost her hair and sense of taste, lost 20 pounds of weight, became dehydrated, suffered pancytopenia and other painful and disabling side effects. She was hospitalized several times and underwent the placement of a gastrostomy tube.

26. After an arduous treatment regimen, Lila Evans' condition is guarded. The failure to timely notify her of her cancer diagnosis caused her to undergo a far more involved course of therapy that has had significant consequences on Lila Evans' health. Her thyroid is now dysfunctional and requires medication, she is in chronic pain and she recently experienced a seizure, the cause for which has not been diagnosed. The areas of her tongue and neck where she underwent radiation are permanently damaged and her cancer could recur. These problems, as well as others, would not have occurred or would have been considerably less severe had the Defendant timely informed her of her cancer diagnosis and begun a timely and appropriate treatment plan.

27. The experience of Plaintiff Lila Evans has had a significant emotional impact on co-Plaintiffs Boyd, Jamie, James and Crystal Evans.

### COUNT I – NEGLIGENCE

Plaintiffs reallege and incorporates by reference herein each and every allegation set forth above and, in addition thereto, alleges the following:

28. When providing medical care to patients, the Defendant and its employees have the duty to use such skill, prudence and diligence as other medical

doctors practicing in the same field(s) of medicine.  This level of skill, prudence and diligence is the standard of care.

29.  A pathology report showing the development of cancer is information that the standard of care requires be transmitted to a patient in a timely manner.

30.  Without timely informing a patient of an abnormal pathology finding, neither a patient nor her providers can formulate an effective treatment plan for the treatment of the abnormal findings.

31.  In treating Plaintiff Lila Evans, the medical standard of care required Defendant's agents and employees to timely inform her of the UCLA Medical Center pathology findings showing she had cancer within a reasonably prompt time after receiving the faxed report on December 9, 2009.

32.  The failure of Defendant and its employees to abide by accepted medical standards regarding the notification of Lila Evans and development of a prompt treatment plan permitted her cancer to significantly progress and spread to surrounding tissues.  In turn, this required Lila Evans to undergo a far more radical course of treatment than would otherwise have been required or indicated.

33.  Alternatively, Defendant's negligent conduct deprived Plaintiff Lila Evans of a chance of a better, more benign outcome from her cancer.

34.  In addition, as a separate breach of the standard of care, Defendant's medical providers were aware that LabCorp was referring Lila Evans' mass to another pathology center for diagnosis when they received the first pathology report on November 20, 2009.  By receipt of that information, Defendant and its providers had a continuing duty to inform themselves of the results of the outside review.  By failing to follow-up and check on the results of the additional pathology review, they separately breached the standard of care governing health care providers.

35. As a result of the negligence of Defendant and its employees, Plaintiff Lila Evans has suffered and continues to suffer bodily and mental injuries, and has sustained and will sustain in the future, medical expenses, lost wages, pain and suffering, loss of established course of life, and other associated damages and compensable injuries.

36. As a result of the negligence of Defendant and its employees, Plaintiffs Boyd, Jamie, James and Crystal Evans have suffered a loss of consortium, emotional distress and other compensable injuries. Depending on Plaintiff's ultimate medical outcome, these injuries may or will include funeral expenses, grief, sorrow and mental anguish.

## ADVISORY JURY REQUESTED

37. Plaintiffs request the Court empanel an advisory jury in this matter per F.R.Civ.P. 39©.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1. For all general, special, and compensatory damages in an amount the Court believes just.
2. For all costs and expenses of suit as allowed by law.
3. For attorneys' fees as allowed by law.
4. For such further relief which to this Court may seem just and equitable.

DATED this 13th day of August, 2012.

DIX, HUNT & McDONALD


BY:   /s/ Jonathan McDonald
JONATHAN McDONALD,
*Attorneys for Plaintiffs*